In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3121

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUWAN MATTHEWS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11-Cr-11—**Rudolph T. Randa**, *Judge.*

ARGUED APRIL 17, 2012—DECIDED DECEMBER 4, 2012

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* As part of a major interagency effort to combat gang violence and drug trafficking in Racine, Wisconsin, state and federal officers identified Juwan Matthews as an "impact player" in the Racine drug trade and used a confidential informant to target him in a series of controlled buys. Matthews was arrested after he sold crack cocaine to the informant on five separate occasions in 2010. He was indicted on five

counts of distributing crack, pleaded guilty to two, and was sentenced to 78 months in prison, the midpoint of a properly calculated sentencing guidelines range.

On appeal Matthews challenges two aspects of his sentence. First, he argues that the district court committed procedural error by treating the 18:1 crack-to-powder sentencing ratio in the guidelines as binding. Second, he claims that the court's decision to adhere to that ratio created unwarranted sentence disparities because other judges in the same district used a 1:1 ratio in like cases. *See* 18 U.S.C. § 3553(a)(6) (instructing district courts to consider whether a sentence results in "unwarranted sentence disparities").

We reject these arguments and affirm. The district court commented on the drug-quantity ratio in direct response to Matthews's argument that the court should follow the lead of other judges in the district and impose a below-guidelines sentence based on a 1:1 crack-to-powder ratio. The judge declined to do so, deferring instead to the 18:1 policy adopted in the Fair Sentencing Act of 2010 and the corresponding amendments to the guidelines. Although the judge adopted a highly deferential stance toward the judgment of Congress and the Sentencing Commission, there is no indication that he misunderstood his discretion to use a different ratio. Matthews's argument to the contrary is implausible this far removed from *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 552 U.S. 85, 109 (2007), and *Spears v. United States*, 555 U.S. 261 (2009). Moreover, the judge's decision to adhere to the ratio endorsed by Congress

and the Commission does not make the resulting within-guidelines sentence unreasonable merely because other judges in the district exercised their discretion to use a different ratio. A sentence disparity that results from another judge's policy disagreement with the guidelines is not "unwarranted" under § 3553(a)(6).

## I. Background

The Racine Police Department, in cooperation with federal law-enforcement agencies, launched a sustained campaign against gang violence and drug trafficking in the Racine area starting in 2008. As part of this special task-force effort, agents began investigating Juwan Matthews and eventually targeted him for "take down" using a confidential informant to make controlled purchases of crack cocaine. In five separate transactions between March 9 and September 17, 2010, Matthews sold a total of 64.5 grams of crack to the informant.

A federal grand jury indicted Matthews on five counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C). Pursuant to a plea agreement, Matthews pleaded guilty to two counts stemming from drug sales on August 10 and September 17, 2010—transactions that took place *after* the August 3, 2010 adoption of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. The case proceeded to sentencing on September 7, 2011. The presentence report ("PSR") applied the amended guidelines containing the drug-quantity tables corresponding to the Act's much-reduced 18:1 crack-to-powder ratio (down from 100:1).

*See* U.S.S.G. § 2D1.1 & app. C amends. 746, 748 (Nov. 1, 2010); *see also Dorsey v. United States*, 132 S. Ct. 2321, 2329 (2012). The amended guidelines called for a base offense level of 26, which when adjusted for acceptance of responsibility and combined with Matthews's criminal-history category of IV, yielded a recommended sentencing range of 70 to 87 months.[1]

Matthews sought a below-guidelines sentence corresponding to a 1:1 crack-to-powder ratio based on sentences received by other defendants in the Eastern District of Wisconsin. As a result of arrests made in the course of the two-year task-force initiative in Racine, the government filed three separate multi-defendant drug cases against a total of 61 defendants.[2] The cases were assigned to other judges in the district. By September 2011, when Matthews was sentenced, 40 of the 61 defendants had been convicted and sentenced to below-guidelines terms of imprisonment based on discretionary decisions by the sentencing courts to use a 1:1 crack-to-powder ratio. Matthews submitted a chart showing that the average guidelines range for the 40 defendants was 156 to 197 months, but the average sentence was 70.5 months. Using a 1:1 ratio in his case would yield an offense level of 16 and a guidelines range of 24 to 30 months. Matthews urged the judge to

---

[1] Matthews's case does not involve a statutory mandatory minimum.

[2] The cases are *United States v. Bonner*, No. 08-CR-162-JPS; *United States v. Barnes*, No. 09-CR-248-LA; and *United States v. Smith*, No. 10-CR-188-CNC.

impose a sentence of 24 months, at the bottom of this hypothetical range, in order to avoid the "unwarranted sentence disparities" forbidden by § 3553(a)(6).

The government responded by presenting the testimony of a Racine police detective who told the court that the more lenient sentence would undermine the task force's efforts by communicating to would-be offenders that they would get off easy if caught. The prosecutor also noted that the 40 defendants in the three multidefendant cases had been sentenced in 2009 and 2010, *before* the 100:1 crack-to-powder ratio was reduced to 18:1 by the Fair Sentencing Act and the corresponding amendments to the guidelines. The prosecutor reminded the court that during this time the Department of Justice's policy on crack-cocaine sentencing was in a state of flux. *See* Memorandum for all Federal Prosecutors from David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice (May 1, 2009), http://www. justice.gov/oip/docs/dag-memo-sentencing-cocaine- offenses.pdf.

More specifically, on May 1, 2009, the Department of Justice released a memorandum announcing that "[t]he President and Attorney General believe Congress should eliminate the sentencing disparity between crack cocaine and powder cocaine" and that the Department would work with Congress and the Sentencing Commission toward that end. *Id.* In the meantime, the Department instructed its attorneys to determine on a case-by-case basis whether to oppose defense requests to vary from the guidelines by using a ratio other than 100:1—adhering, of course, to any applicable statutory

minimums. *Id.* The prosecutor candidly acknowledged that during this interim period, "it's fair to say [that] the Department of Justice, the United States Sentencing Commission, and Congress, were a bit at sea in terms of what they were trying to do with crack cocaine offenses." He conceded that for "many" of the defendants in the three Racine task-force cases, "the United States was actively advocating for [a 1:1 ratio] at the direction of the Department."

But the prosecutor also noted that with the adoption of the Fair Sentencing Act,

> now we have a definitive statement from Congress that has been adopted by the United States Sentencing Commission suggesting that the only way to sentence people is 18-to-one. Again, all the arguments for one-to-one ratio were presented to Congress . . . [, and] nonetheless Congress still came out with an 18-to-one ratio. And I think that is the ratio that should control here.

He also advised the court that some of the defendants in the other cases had received credit for cooperating with the government, which affected the length of their sentences by operation of U.S.S.G. § 5K1.1 and distinguished their cases from Matthews's. The prosecutor recommended a sentence of 87 months, at the top of the guidelines range.

The district court declined Matthews's invitation to impose a sentence based on a hypothetical range derived from a 1:1 crack-to-powder ratio. The judge noted that since the adoption of the Fair Sentencing Act and the corresponding amendments to the sentencing guide-

lines, "the guidelines are 18-to-one relative to crack co-caine" and "that . . . is something that the Court is held to." The judge explained that he would not be "driven" by his "own attitudes towards the severity of crack versus powder," but would follow "what the Legislature says." To adopt Matthews's argument, the judge said, would go "against the will and desire of the Con-gress[, w]hich . . . represents the will of the people."

The court then weighed the § 3553(a) sentencing factors, emphasizing in particular that Matthews's criminal-history category understated the seriousness of his prior record, which began at age 11 and included felony gun possession, resisting an officer, and a "pretty significant" armed robbery at a gasoline station in which Matthews "clubb[ed]" the victim and "thr[ew] him in a storage room." The judge ultimately rejected the sentencing recommendations of both the prosecution and the defense and settled on a sentence of 78 months, in the middle of the guidelines range.

Before the hearing concluded, the prosecutor asked the judge to clarify his position on the 18:1 ratio:

> MR. MANNING: . . . I would just like to ask a point of clarification for purposes of any potential [a]ppel-late record. The Court obviously recognizes under Supreme Court precedent that it would still be per-mitted to deviate from the sentencing guidelines and impose a one-to-one, but the Court has expressed its reasons for not doing that, correct?
>
> THE COURT: That's correct.

Matthews timely appealed.

## II. Discussion

Matthews challenges his sentence on two related grounds. He argues that (1) the district court erroneously treated the 18:1 crack-to-powder ratio in the guidelines as mandatory; and (2) the court's decision not to vary from that ratio resulted in unwarranted sentence disparities when compared to the sentences of other defendants in the three multidefendant cases arising from the efforts of the Racine task force.[3] *See* 18 U.S.C. § 3553(a)(6). The first of these arguments is a procedural claim, which we review de novo. *United States v. Grigsby*, 692 F.3d 778, 791 (7th Cir. 2012); *United States v. Carter*, 530 F.3d 565, 577 (7th Cir. 2008). The second amounts to a claim that the 78-month sentence is substantively unreasonable. Reasonableness review is deferential;

---

[3] Matthews also argues as a threshold matter that because the district judge did not specifically mention the guidelines range before pronouncing sentence, the court failed to properly calculate the range. Matthews concedes, however, that the PSR correctly calculated the guidelines range and also that the judge specifically said he was imposing a sentence "in the middle of the range." Moreover, the judge began his sentencing remarks by saying that he would first "take into account the guideline range established by the sentencing guidelines" and "then integrate . . . the factors under 3553." The court therefore started with a guidelines range that Matthews concedes was correctly calculated and moved from there to evaluate the § 3553(a) sentencing factors. This was not procedural error. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Carter*, 538 F.3d 784, 789 (7th Cir. 2008).

we will reverse only for abuse of discretion. *Grigsby*, 692 F.3d at 791. A sentence within a properly calculated guidelines range (as Matthews's was) is presumed to be reasonable, and it is the defendant's burden to over-come the presumption. *United States v. Freeman*, 691 F.3d 898, 902 (7th Cir. 2012).

## A. Procedural Error

Matthews first argues that the judge's commentary at sentencing demonstrates that he thought he was *required* to impose a sentence based on the 18:1 crack-to-powder ratio reflected in the drug-quantity tables in U.S.S.G. § 2D1.1. Treating the guidelines as mandatory is indeed a procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009). The Supreme Court has made it clear that the district court's sentencing discretion under *Booker* and *Kimbrough* extends to a policy disagreement with the crack-to-powder ratio in the guidelines. *Spears*, 555 U.S. at 265-66 ("[W]e now clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.").

Here, the judge commented on the 18:1 ratio in response to Matthews's argument about sentencing disparities compared to other defendants who were prosecuted in connection with the task-force crackdown on gang and drug activity in Racine. Read as a whole, however, the judge's remarks do not suggest that he misunderstood the extent of his discretion; that would

be highly unusual this far removed from *Booker*, *Kimbrough*, and *Spears*. Rather, the record suggests that the judge was disinclined to substitute his own views of the severity of crack-cocaine sentences for those of Congress and the Sentencing Commission. Indeed, after prompting from the prosecutor, the judge confirmed that he understood he had the discretion to use a 1:1 ratio but chose not to do so in deference to the policy judgment of Congress.

There is nothing procedurally improper about this. The policy judgments of Congress and the Sentencing Commission are proper anchors for the exercise of *Booker* sentencing discretion. *See United States v. Curb*, 626 F.3d 921, 927 (7th Cir. 2010) ("[W]e have never held that a district judge was required to reject the Sentencing Guidelines applicable to crack cocaine."); *United States v. Grigg*, 442 F.3d 560, 564-65 (7th Cir. 2006) ("[D]istrict courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that crimes such as Mr. Grigg's are serious offenses deserving serious sanctions."). The district court did not mistakenly treat the guidelines as mandatory.

## B. Reasonableness of the Sentence

Matthews also argues that his 78-month sentence is unreasonable because the district court "failed to give meaningful consideration" to § 3553(a)(6), which instructs sentencing courts to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct." This argument rests on a comparison of his sentence with those of the defendants in the three contemporaneous multidefendant cases brought in the Eastern District of Wisconsin arising out of the work of the narcotics task force in Racine. As we have noted, the cases were assigned to other courts, and by the time Matthews was sentenced, 40 of the 61 defendants had received below-guidelines sentences based on discretionary decisions by the judges to use a 1:1 crack-to-powder ratio instead of the then-prevailing 100:1 ratio.

As a procedural matter, Matthews's § 3553(a)(6) challenge doesn't get very far. The record does not support his claim that the district court inadequately considered his argument about the need to avoid unwarranted sentence disparities. After reviewing the sentencing memoranda filed by the parties and listening to arguments made in open court, the judge acknowledged that a 1:1 ratio could be used and explained that he would defer instead to Congress's policy preference in favor of the 18:1 ratio. Nothing more is procedurally required.

The argument is better understood as a challenge to the substantive reasonableness of the sentence. As a general matter, it is not unreasonable for a judge to agree with the sentencing policy established by Congress and the Sentencing Commission, as the judge did here. *See Curb*, 626 F.3d at 927-28; *Scott*, 555 F.3d at 610 ("If a district court may deviate from the Guidelines based on its disagreement with the Sentencing Commission's policy, it is equally within its authority to

adhere to the Guidelines because it concurs with the policy judgment the Guidelines reflect."). More to the point, § 3553(a)(6) "disallows *'unwarranted* sentence disparities' . . . , not all sentence differences." *United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir. 2006). "[A] sentencing *difference* is not a forbidden 'disparity' if it is justified by legitimate considerations," *id.*, such as the judge's determination that the circumstances warrant deference to the policy judgment of Congress or the Sentencing Commission.

Accordingly, we have held that "[a] sentence within a properly ascertained range . . . cannot be treated as unreasonable by reference to 3553(a)(6)." *Id.* Because "the sentencing guidelines are based on national sentencing patterns, . . . a district court necessarily considers the interest in consistency between similarly situated defendants when it considers a properly calculated guidelines recommendation." *Grigsby,* 692 F.3d at 792; *see also United States v. Bartlett,* 567 F.3d 901, 908 (7th Cir. 2009) ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

It is true that *Booker* sentencing discretion inevitably introduces the possibility for sentence disparities among defendants who may seem similarly situated. *See United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (en banc) ("No judge is *required* to sentence at variance with a Guideline, but every judge is at liberty to do so."). The Supreme Court has accepted this as a consequence of its remedial decision in *Booker*. *See Kimbrough*, 552 U.S. at 107-08 ("[O]ur opinion in *Booker* recognized that some

departures from uniformity were a necessary cost of the remedy we adopted."). Matthews has not compared the particulars of his case to the other defendants' cases, but instead relies solely on the policy disagreement among the judges regarding the appropriate drug-quantity ratio. His argument thus boils down to this: Section 3553(a)(6) operates categorically, exerting automatic downward pressure on sentences in a particular class of cases (here, crack-cocaine cases) when any one judge in the district adopts a more lenient sentencing policy than Congress or the Sentencing Commission.

Accepting this argument would undermine the structure of the guidelines sentencing system. "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly." *Boscarino*, 437 F.3d at 638; *see also United States v. Smith*, 510 F.3d 603, 610 (6th Cir. 2010) ("To find an unwarranted disparity in this case would allow defendants to bind district courts according to the most lenient sentence that another court had imposed for a similar crime."). For a period of time other judges in the Eastern District of Wisconsin exercised their discretion to use a 1:1 crack-to-powder ratio instead of the then-prevailing 100:1 ratio. That does not make it an abuse of its discretion for the district court in this case to defer to the decision of Congress and the Sentencing Commission to settle on the 18:1 ratio. "A district judge's reasoned agreement with an advisory sentencing guideline will not be deemed unreasonable on appeal." *Curb*, 626 F.3d at 927-28. Matthews's

78-month within-guidelines sentence is presumed reasonable, and he has not overcome the presumption.

AFFIRMED.