In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2242

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARL MORRIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:14-cr-00029-bbc-1— **Barbara B. Crabb**, *Judge.*

ARGUED OCTOBER 31, 2014 — DECIDED JANUARY 5, 2015

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* Carl Morris pled guilty to one count
of distribution of crack cocaine, in violation of 21 U.S.C.
§ 841(a)(1). Although the district court sentenced him below
the guidelines range, it did so without addressing his principal
arguments in mitigation. Because we cannot determine from

this record whether the court considered those arguments in fashioning the sentence, we vacate and remand for re-sentencing.

## I.

Morris was with a friend one day when that friend sold crack cocaine to another man. Not knowing that the buyer was a confidential informant, Morris then called the man and offered to sell him crack cocaine. The informant initially requested a quarter ounce of crack from Morris. On December 3, 2012, Morris delivered less than half that amount (3.288 grams) to the informant but charged him for the full amount. The informant then ordered another quarter ounce and asked to be reimbursed for the earlier shortage. On December 5, 2012, Morris delivered slightly more than a quarter ounce (7.447 grams) of crack to the informant. At the direction of his police handlers, the informant then substantially increased his order, asking for an ounce and a half of crack cocaine. Morris agreed to the sale but on December 19, 2012, he delivered an ounce and a half (45 grams) of a counterfeit substance that contained no crack cocaine in exchange for $1900. Morris was charged in a two-count indictment with the first two deliveries. He eventually pled guilty to the charge related to the second delivery.

A probation officer prepared a Presentence Investigation Report ("PSR") calculating the guidelines range applicable to the offense conduct (the December 5 delivery) as well as relevant conduct (the December 3 delivery and the uncharged December 19 delivery of a counterfeit substance). *See* U.S.S.G. § 1B1.3 and Application Note 9. Under Application Note 4 of

U.S.S.G. § 2D1.1, counterfeit substances are treated the same as controlled substances when calculating the guidelines range, and so the PSR held Morris accountable for 55.735 grams of crack cocaine. Guidelines sentences for drug crimes are heavily influenced by the quantity of drugs involved and so Morris's sentence was driven largely by the counterfeit substance, which accounted for more than 80% of the drug weight. Moreover, the guidelines tables penalize crack cocaine offenses much more harshly than powder cocaine crimes, applying an 18:1 sentencing ratio. In Morris's case, the PSR set forth a guidelines range of 57 to 71 months of imprisonment.

Morris filed a sentencing memorandum arguing first that the government had engaged in sentencing entrapment by directing the confidential informant to order a much greater quantity of crack cocaine than Morris had previously sold. He contended that the record contained no evidence that he had a history of selling or an ability to sell such a large quantity of drugs. That he never could have filled such a large order was bolstered, he claimed, by his resort to delivering a counterfeit substance that contained no crack cocaine at all.

Morris next urged the court to apply a 1:1 crack-to-powder cocaine ratio for his offense because the guidelines disparity was the result of political compromise rather than for any reason founded in medical, chemical, physiological, or other scientific or social science evidence. If the court employed a 1:1 ratio, Morris calculated that his guidelines range would drop to 21 to 27 months. Finally, Morris noted that, if the court removed the counterfeit drugs from the equation, his advisory sentencing range would be 15 to 21 months. In short, the combination of a large quantity of counterfeit drugs, an

amount that was ordered at the government's direction, together with the crack/powder sentencing disparity, dramatically increased the advisory guidelines range from 15-to-21 months to 57-to-71 months. Morris argued that these factors along with his recent efforts to rehabilitate himself warranted a sentence of 18 months imprisonment.

At the sentencing hearing, the government agreed that a sentence within the 57-to-71 month advisory guidelines range might not be appropriate but characterized the 18 month request as "woefully inadequate." The government noted that Morris initiated contact with the informant and offered to sell him crack, negating any inference that Morris was entrapped. The government characterized Morris's use of a counterfeit substance as an attempt to "rip off" the informant rather than evidence that Morris could not deliver the larger amount of crack.

The district court judge, who had previously sentenced Morris at a probation revocation hearing, was well-versed with his life story. The court noted and took into account Morris's difficult family history, his attempts at rehabilitation, his failures at avoiding a return to crime, his attempts at employment and education, and other factors relevant under section 3553(a). But the court did not remark on his principal arguments in mitigation, which were raised in both the sentencing memorandum and at the sentencing hearing. Namely, the court did not address his claim that the weight of the counterfeit substance, combined with the crack/powder disparity unfairly drove his sentencing range significantly higher. The court ultimately decided on a below-guidelines sentence:

> Taking into consideration the nature of the offense, as well as your personal history and characteristics, I'm persuaded that a custodial sentence of 48 months is reasonable and no greater than necessary to hold you accountable, protect the community, provide you the opportunity for rehabilitative programs and achieve parity with the sentences of similarly-situated offenders.

R. 28, Sent. Tr. at 12. Morris appeals.

## II.

On appeal, Morris contends that the district court committed procedural error when it failed to address his principal arguments in mitigation. He asks that we vacate and remand for resentencing. Our review of sentencing decisions generally is limited to whether they are reasonable, applying the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). We first must ensure that the district court committed no significant procedural error, including, among other things, incorrectly calculating the guidelines range, or failing to explain adequately the chosen sentence. *Gall*, 552 U.S. at 51. If the district court erred in sentencing Morris, we will apply the doctrine of harmless error in determining whether resentencing is necessary. *United States v. Olson*, 450 F.3d 655, 683 (7th Cir. 2006). An error related to the validity of a defendant's sentence is harmless only if it did not affect the district court's choice of sentence. *Olson*, 450 F.3d at 683; *United States v. Schlifer*, 403 F.3d 849, 854 (7th Cir. 2005).

Before turning to the merits of Morris's claim, we must address the government's claim that he waived any challenge

to the adequacy of the district court's treatment of his mitiga-
tion arguments. After imposing the sentence, the court asked,
"Anything further in this matter?" The government then
moved to dismiss the remaining count of the indictment and
the court granted that motion. The court then asked Morris's
counsel if there was "anything further?" and she replied, "No,
Your Honor. Thank you." The government cites our opinion in
*Garcia-Segura* for the proposition that counsel's failure at that
point to ask for a specific ruling on the mitigation claims
operates as a waiver of those claims on appeal. *See United States
v. Garcia-Segura*, 717 F.3d 566 (7th Cir.), *cert. denied*, 134 S. Ct.
667 (2013). We disagree.

In *Garcia-Segura*, we noted that it was not uncommon for a
defendant to argue on appeal that the district court had not
adequately addressed a principal argument in mitigation. We
therefore encouraged district courts to address the adequacy
of the review on the record:

> In order to ensure that defendants feel that they
> have had such arguments in mitigation addressed
> by the court and to aid appellate review, after
> imposing sentence but before advising the defen-
> dant of his right to appeal, we encourage sentencing
> courts to inquire of defense counsel whether they
> are satisfied that the court has addressed their main
> arguments in mitigation. If the response is in the
> affirmative, a later challenge for failure to address a
> principal mitigation argument under the reasoning
> of *Cunningham* would be considered waived. If not,
> the trial court would have the opportunity to clarify
> whether it determined that the argument was "so

> weak as not to merit discussion," lacked a factual basis, or has rejected the argument and provide a reason why. *See Cunningham*, 429 F.3d at 679. An affirmative answer, however, would not waive an argument as to the merits or reasonableness of the court's treatment of the issue.

*Garcia-Segura*, 717 F.3d at 569. In this case, the district court's generic inquiry of "anything further?" did not serve the specific purpose we had in mind in *Garcia-Segura*. The point of *Garcia-Segura* was to "make[] it possible to correct a genuine *Cunningham* procedural error on the spot, at the end of the sentencing hearing in the district court." *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014). A general inquiry of whether the parties have any further business before the court is certainly useful; in this instance, the government used that opportunity to move to dismiss the remaining count of the indictment. But that blanket query did not alert Morris's counsel that she needed to do something further to preserve her sentencing arguments, as we envisioned in *Garcia-Segura*. We again encourage courts to ask defense counsel "whether they are satisfied that the court has addressed their main arguments in mitigation." *Garcia-Segura*, 717 F.3d at 569. *See also Donelli*, 747 F.3d at 940-41 (*Cunningham* procedural error waived where the court asked whether counsel required further elaboration of the court's reasons for the sentence and counsel replied in the negative). But there was no waiver here. Morris's lawyer did everything necessary to preserve the issue for appeal. *See* Fed. R. Crim. P. 51; *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) (noting that the rules do not require a litigant to complain about a judicial choice after it has

been made; rather, a litigant preserves a contention for review by informing the court before the decision is made of the action the party wishes the court to take and the grounds for that action).

We turn to the merits of Morris's claim. Morris argued that the court should reduce his guidelines sentence because the informant's police handlers directed the large size of the final purchase, because most of the drug quantity attributed to him was a counterfeit substance, and because he was subjected to the 18:1 crack-to-powder cocaine ratio for that counterfeit substance. In combination, these factors subjected him to a significantly greater sentencing range, and yet the court did not comment on these principal arguments in mitigation. A judge need not comment on every argument the defendant raises. *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). "[A]rguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). But when a court gives little or no attention to the defendant's principal argument when that argument "was not so weak as not to merit discussion," we cannot have confidence that the judge adequately considered the section 3553(a) factors. *Cunningham*, 429 F.3d at 679. "[I]f anyone acquainted with the facts would have known without being told why the judge had not accepted the argument," then the judge need not specifically comment on that argument. *Id*. *See also Garcia-Segura*, 717 F.3d at 568 (a sentencing court must address a defendant's principal arguments in mitigation unless they are too weak to merit discussion); *Miranda*, 505 F.3d at 792 (same).

We have twice held that a defendant's argument for a reduced ratio between crack and powder cocaine offenses is "not so weak as to not merit discussion." *United States v. Johnson*, 643 F.3d 545, 549 (7th Cir. 2011). *See also United States v. Arberry*, 612 F.3d 898, 899 (7th Cir. 2010) (same). Indeed, the Supreme Court indicated that district courts possessed the discretion to conclude that the crack/powder sentencing ratio was greater than necessary to achieve sentencing goals:

> The crack cocaine Guidelines … do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of "empirical data and national experience." *See Pruitt*, 502 F.3d, at 1171 (McConnell, J., concurring). Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses "greater than necessary" in light of the purposes of sentencing set forth in § 3553(a). See *supra*, at 568. Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, even in a mine-run case.

*Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007). *See also Spears v. United States*, 555 U.S. 261, 265-66 (2009) ("we now

clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines."). Moreover, Morris's circumstances did not present a "mine-run case" because he was subjected to a substantially increased penalty not for delivering crack cocaine but for delivering a counterfeit substance.

The government concedes that the district court failed to address Morris's argument that his sentence was unfairly driven by the crack/powder disparity, by the inclusion of a large amount of a counterfeit substance in the drug calculation, and by the actions of the informant's police handlers. Under *Johnson* and *Arberry*, that was a procedural error. Although it is true that the court granted Morris a below-guidelines sentence, it is impossible to discern from this record whether the court credited Morris's principal arguments in fashioning that sentence and so we must remand. *Johnson*, 643 F.3d at 549 (remand is necessary to consider the defendant's argument regarding the crack/powder disparity even when the court sentenced the defendant below the guidelines range). The court may well have considered and rejected Morris's arguments and simply neglected to memorialize that analysis on the record. Perhaps the court concluded, for example, that delivering a counterfeit substance presented the same risk for violence as delivering crack cocaine. We offer no opinion on the reasonableness of Morris's below-guidelines sentence should the district court decide to reimpose it. But because we cannot

determine whether the error here affected the district court's choice of sentence, it may not be characterized as harmless. *Olson*, 450 F.3d at 683; *Schlifer*, 403 F.3d at 854.

VACATED AND REMANDED.