In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3664

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WALTER FREEMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-00627-1 — **Sharon Johnson Coleman**, *Judge.*

ARGUED SEPTEMBER 23, 2016 — DECIDED DECEMBER 7, 2016

Before RIPPLE, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* On September 6, 2012, the defendant
Walter Freeman was charged in a five-count indictment:
in Counts 1 and 2, with distribution of 28 grams or more of a
mixture containing cocaine base in violation of 21 U.S.C.
§ 841(a)(1); in Count 3, with possession of a firearm as a felon,
in violation of 18 U.S.C. § 922(g)(1); in Count 4, with distribu-
tion of marijuana in violation of 21 U.S.C. § 841(a)(1); and in
Count 5 with possession of a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Freeman pled guilty to Counts 1 and 5. In an addendum to the plea agreement, Freeman also stipulated to the commission of a third offense, possession of a firearm after being convicted of a felony, which had been the basis of a different indictment. The facts underlying those charges are not relevant to the issues on appeal; in brief, the record indicated that Freeman distributed approximately 28 grams of crack cocaine and traded marijuana for four firearms. Freeman admitted that he had been selling crack cocaine to a small group of customers since at least 1999 and bought and sold 80 firearms – 40 between 1999 and 2001 to a high ranking member of the Gangster Disciples and 40 in a 2-month period from October 2010 to December 2010 to a different Gangster Disciples member, although only the latter 40 were included for purposes of relevant conduct. The district court calculated the guidelines range as 140 to 175 months on Count 1 and the stipulated count, and 60 months' consecutive imprisonment on Count 5. After considering the factors under 18 U.S.C. § 3553(a), the court imposed a sentence below the guidelines range, sentencing Freeman to 132 months' imprisonment on Count 1 and the stipulated offense, and a 60 months' consecutive sentence on Count 5.

Although Freeman received a below-guidelines sentence, he nevertheless challenges that sentence on three grounds. First, he argues that the district court erred in failing to consider one of his principal arguments, which was that the district court should sentence him using a 1:1 crack-to-powder ratio instead of the 18:1 ratio encompassed within the Sentencing Guidelines. In addition, Freeman asserts that his sentence

should be vacated because the district court relied on its own speculations as to uncharged criminal conduct and improperly determined the sentence. Finally, Freeman maintains that the district court erred in allowing its frustration with his litigation tactics to affect his sentence. We address these arguments in turn.

Freeman argued to the district court that it should categorically reject the 18:1 crack-to-powder ratio set forth in the Guidelines, and instead apply a 1:1 ratio. Freeman argued that the 18:1 ratio was the result of legislative compromise rather than sound data, and that any disparity between the crack and powder cocaine guidelines was inappropriate and unjust. That argument was not an as-applied challenge, based on any specific facts regarding Freeman or his criminal conduct, but rather was a categorical challenge to the ratios. In imposing its sentence, however, the district court did not explicitly address this argument, and Freeman asserts that sentence should be vacated and the case remanded for the court to do so.

As an initial matter, we note that this type of claim, as to whether a district court has properly addressed an argument, should be an issue that we seldom see in the future because it will be resolved in the district court rather than on appeal. As long as district courts follow the approach we set forth in *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013), the district court will be apprised immediately if defense counsel believes issues were not addressed, and the district court can clarify its position at that time. Specifically, in *Garcia-Segura*, we identified the preferred approach as follows:

> we encourage sentencing courts to inquire of de-
> fense counsel whether they are satisfied that the
> court has addressed their main arguments in mitiga-
> tion. If the response is in the affirmative, a later
> challenge for failure to address a principal mitiga-
> tion argument under the reasoning of *Cunningham*
> would be considered waived. If not, the trial court
> would have the opportunity to clarify whether it
> determined that the argument was "so weak as not
> to merit discussion," lacked a factual basis, or has
> rejected the argument and provide a reason why.

*Id*; see also *United States v. Rosales*, 813 F.3d 634, 638 (7th Cir. 2016). We urge district courts to ask that question and thereby prevent this type of issue from recurring.

Turning to the issue in this appeal, a district court must consider all of a defendant's principal, non-frivolous arguments in sentencing. *Rosales*, 813 F.3d at 637. That requirement serves as a safeguard to ensure that the district court has considered the principal issues. *Id.* That does not mean, however, that the district court must respond expressly to every argument; to impose such a burden would require the courts to respond in each case to numerous boilerplate categorical challenges, undoubtedly with the court's own boilerplate response, regardless of whether those claims have been routinely rejected by the court in prior cases. We do not require such a formulaic exercise. Accordingly, we have held that a district court need only respond to arguments of recognized legal merit that have a factual basis. *Id.*

In *Rosales*, 813 F.3d at 637–38, we considered whether a district court must address a challenge to a career offender guideline, and we distinguished between as-applied and categorical challenges to guidelines provisions as follows:

> The court is not obliged to address all such arguments questioning the reasonableness of Guidelines provisions. The court may pass over in silence a blanket policy challenge like Rosales's argument that the career offender guideline was poorly conceived and is overbroad. *See United States v. Estrada–Mederos,* 784 F.3d 1086, 1088 (7th Cir.2015) (collecting cases). But an as-applied challenge to a guideline, provided it is grounded in the facts of the case, not frivolous, and adequately presented to the court, is one that must be addressed. *See United States v. Schmitz,* 717 F.3d 536, 542 (7th Cir.2013) (distinguishing between categorical and as-applied challenges to guideline); *see also, e.g., United States v. Morris,* 775 F.3d 882, 887 (7th Cir.2015) (vacating sentence and remanding where district court failed to address defendant's argument that crack-to-powder cocaine ratio resulted in excessive sentencing range given that most of drug quantity attributed to him comprised counterfeit crack cocaine).

Thus, district courts need not explicitly address blanket challenges to the reasonableness of guidelines in every case in which such boilerplate challenges are raised. The court may of course choose to address such challenges and to agree or disagree with the guidelines, but such routine challenges to the

reasonableness of the guidelines do not require explicit rejection. The challenge brought by Freeman to the ratio is a categorical one, and therefore under *Rosales* such a blanket policy challenge can be passed over in silence.

Freeman nevertheless contends that the *Rosales* court is in conflict with other decisions of this court in which we found error in the district court's failure to respond to arguments for a reduced crack-to-powder ratio including *United States v. Morris*, 775 F.3d 882 (7th Cir. 2015), *United States v. Johnson,* 643 F.3d 545 (7th Cir. 2011), and *United States v. Arberry*, 612 F.3d 898 (7th Cir. 2010). Those decisions, however, are not in conflict with *Rosales*. First, *Johnson* and *Arberry* both concerned challenges to the 100:1 crack-to-powder ratio that was in place at that time. The excessive impact that such a drastic ratio had on sentences caused a groundswell of opposition that extended from courts to the Justice Department itself. See *United States v. Matthews*, 701 F.3d 1199, 1202 (7th Cir. 2012) (discussing history). As we noted in *Matthews,* the Justice Department recommended elimination of the 100:1 disparity and actively advocated against its use in some criminal cases. *Id*. Therefore, at the time *Johnson* and *Arberry* were decided, categorical challenges to the 100:1 ratio were regularly granted, at times with the agreement of the Justice Department itself. In that climate, silence could not be interpreted as acquiescence in the status quo because no such consensus as to reasonableness existed. Although some courts have determined that the 18:1 ratio at issue in this case is also unreasonable, Freeman points to no such frequent rejection as was present with respect to the 100:1 ratio and which rendered silence ambiguous. As for *Morris*, which did involve the 18:1 ratio, some broad language

in that case, citing *Johnson* and *Arberry*, indeed indicated that a defendant's argument for a reduced crack-to-powder ratio is not an argument that is so weak as to not merit discussion. *Morris*, 775 F.3d at 887. But the *Rosales* court cited *Morris* in holding that only as-applied challenges need to be explicitly addressed, noting that in *Morris* the defendant argued that the ratio resulted in an excessive sentencing range given that most of the drug quantity attributed to him comprised counterfeit crack cocaine. *Rosales*, 813 F.3d at 638. Accordingly, the *Morris* court faced a guidelines challenge that was premised on the application to the defendant's specific facts, in which case the district court must explicitly address the challenge. For that reason alone, *Morris* is not inconsistent with the holding of *Rosales*, which controls in this case. We note, however, that even if *Morris* had not included an as-applied challenge, the determination as to whether a categorical challenge requires a response is not a static inquiry. Arguments that are novel at one point in time and require explicit discussion may, after a period of years, no longer require explicit discussion once a consensus emerges or such challenges have been repeatedly rejected such that silence, absent an indication otherwise, would signal agreement with the conventional disposition of such claims. By this point in time, district courts clearly are aware of their discretion to disagree with the policies and provisions of the Guidelines; accordingly, when routine categorical challenges are made, absent unusual circumstances, the district court's silence as to it may properly be construed as a rejection of that challenge and agreement with the Guidelines provision. See e.g. *United States v. Petty*, 467 Fed. Appx. 520, 522 (7th Cir. 2012) (unpublished) (holding as early as 2012 that

circuit precedent was against a categorical challenge to the 18:1 ratio and that the argument was raised solely to preserve it for Supreme Court or subsequent circuit review); *United States v. Knox*, 496 Fed. Appx. 649, 656 (7th Cir. 2012) (unpublished) (noting that we have repeatedly held that there was adequate justification for treating crack offenses more seriously and that the court was not required to consider the argument that the 18:1 ratio is not supported by empirical evidence.). The district court's silence regarding the categorical challenge to the 18:1 ratio was therefore not reversible error in this case.

Freeman's remaining two challenges to the sentence are also without merit. First, Freeman challenges the court's analysis of his request for a variance based on his criminal history. Freeman fell within a Criminal History Category V and argued that his criminal history was overstated because nearly all of his criminal history points came from misdemeanor convictions and most were the result of driving on a suspended license. He had been convicted of a single felony offense which occurred when he was 18 years old, and all other criminal history points were because of driving offenses such as driving on a suspended license, as well as possession of marijuana and unlawful use of a weapon misdemeanors. Defense counsel argued that a Criminal History Category II would be more appropriate, rendering a guidelines range of 97 to 121 months, and suggested that a sentence of 120 months would be appropriate.

Freeman takes issue with the district court's analysis of the issue, quoting the court as follows:

> And the Court does believe the criminal history category is overstated in one way. That most of your convictions except for one early on they are all for traffic violations. When you look at it, those are the convictions. That's what it is. But this Court would be naive to believe that your background is only one of driving infractions, and that also is underscored by what I'll talk about later, how smart you are, how intelligent you are. You get stopped for a reason and then you get driving on a suspended.

> You've been, as your lawyer said, selling little bits of drugs here and there for a while. And the Court—that's why you were stopped. And somehow you were too smart and all they could get you on was driving on a suspended license. That would be what common sense would tell me.

Sent. Tr. 34-35. Freeman argues that the court lacked any basis for its assumption that he had engaged in other criminal activity which had not already been accounted for as relevant conduct in the guidelines, and that his driving offenses evidenced other criminal conduct. He concludes that the district court's § 3553(a) analysis is therefore flawed because it was based on unreliable information. That argument fails on two grounds. First, it is not irrational for a court to conclude that the criminal history is not overstated merely because it involved mainly driving offenses given the nature of the criminal conduct here. Even concerning the driving on a suspended license offenses themselves, the status of a person's license is not apparent prior to the stop, thus supporting the

court's reflection that the initial stop was based on a different criminal concern. More significantly, Freeman failed to include the entire discussion, in which the court then clarifies that it was the nature of Freeman's criminal conduct and the extent of it that indicated his criminal history was not overstated. Here is the discussion in its entirety, with the italicized portion being the portion of the paragraph not discussed by Freeman in which the court clarifies what its "common sense" would tell it:

> You've been, as your lawyer said, selling little bits of drugs here and there for a while. And the Court—that's why you were stopped. And somehow you were too smart and all they could get you on was driving on a suspended licenses. That would be what common sense would tell me. *That that's too many years, you're too old for all of a sudden to go from basically a fairly minor crime to all of a sudden selling guns and drugs on the street like just a total professional. You build up to that. It just doesn't happen. I've seen the cases where somebody needs money. Because of their situation they try to make a fast buck by selling some type of sawed off or half working gun out of the back of their car to an undercover agent and they get caught. I've seen those. That's not what this is.*

That full quote reveals that the court's focus was not on whether his traffic stop alone signaled other criminal conduct was occurring, but whether the circumstances as a whole indicated that his criminal history was not overstated. The

court did not err in opining that Freeman's criminal history was not overstated merely because it involved largely driving offenses, given that the nature of those driving offenses and the professionalism and extent of his criminal conduct in this case both indicate that he indeed had an extensive criminal history. In fact, the undisputed facts before the court provided some confirmation that his criminal history was not overstated, in that the guidelines range included 40 firearms that Freeman sold to a Gangster Disciples member from October 2010 to December 2010 but not 40 other firearms that Freeman sold to different high-ranking Gangster Disciples member from 1999 to 2001.

Therefore, the court could properly reject Freeman's argument that the criminal history category was overstated, but the court did not go that far. The court in fact credited that argument and adjusted the sentence in part based on that. The district court imposed a sentence below the guidelines, and in its Statement of Reasons the district court indicated as one reason its issue with the criminal history category, and specifically that Freeman's background of eight offenses involving driving on a suspended license and two other offenses, serving less than a year in jail, do not support a criminal history category of five. Therefore, the district court accepted Freeman's argument in substantial part and rejected imposition of the criminal history category in the guidelines. Accordingly, there is no reversible error on this ground.

Freeman's last challenge to the sentence rests on a mischaracterization of the district court's decision. The district court in the course of the sentencing hearing noted Freeman's intelligence and ability to organize and manage the trial

process. In that discussion, the district court noted that Freeman was "very specific and very calculating as to what he thinks is going to serve his situation best, and that he worked with one lawyer who was very good and worked hard and then when that lawyer stepped aside he again was able to work with the second lawyer and present the best case in his defense. Freeman argues that the statements indicate the court's frustration with his litigation tactics, including his decision to fire his first lawyer, and that the court cannot properly increase a defendant's sentence based on that defendant's burdensome litigation strategy. A natural reading of the court's statements does not support Freeman's conclusion that the court sought to increase his sentence because he burdened the court with his litigation tactics. The comments cited by Freeman were part of a series of examples provided by the district court reflecting Freeman's intelligence, and the need for specific deterrence because that intelligence both provided Freeman with other non-criminal options to make a living and potential for rehabilitation but also the potential to engage successfully in criminal activity. There is no merit to the argument that the court's statements reflect a frustration with Freeman's litigation strategy and desire to increase the sentence on that basis.

Accordingly, the court's sentence must be affirmed. In closing, we again urge the district court to avoid some of the issues appealed here by inquiring at the close of the sentencing hearing whether defense counsel are satisfied that the court has addressed their main arguments in mitigation. See *Garcia-Segura*, 717 F.3d at 569; *Rosales*, 813 F.3d at 638. That inquiry will ensure that the parties' arguments are fully heard, and

eliminate appeals on the basis that the arguments were not properly addressed.

The decision of the district court is AFFIRMED.