In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 05-1302 & 05-1303

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HAIDER BOKHARI and
QASIM BOKHARI,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 04-CR-56—**Rudolph T. Randa**, *Chief Judge.*

ARGUED SEPTEMBER 12, 2005—DECIDED DECEMBER 6, 2005

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Defendants Haider Bokhari and Qasim Bokhari pled guilty to various counts of mail fraud and money laundering arising out of their scheme to defraud a federal government program that provides funds to economically disadvantaged schools. In separate proceedings, the district court sentenced each defendant to concurrent sentences of seventy-two months' imprisonment for money laundering and sixty months' imprisonment for mail fraud. The defendants appeal these sentences, claiming that the district court erred in failing to make precise calculations of the total offense levels and corresponding sentencing ranges under the United States Sentencing Guidelines

("Guidelines"). We agree, and therefore vacate the sentences and remand for resentencing.

## I.  BACKGROUND

Defendants were indicted for defrauding the federal government's E-Rate Program, which provides funding for economically disadvantaged schools to obtain or upgrade computer systems for students. The E-Rate Program requires schools to solicit competitive bids for work and submit the proposed contracts and certifications to the federal government. The government then pays a percentage of the cost directly to the contracted provider, while the school pays the remainder, depending on the school's financial needs.

The defendants defrauded the federal government by inducing school officials to contract with their company in exchange for promises that the defendants would waive any fees due to them from the schools. They also promised certain schools free computers.[1] In some instances, the defendants fraudulently took over the school's role by submitting directly to the federal government forms that inflated and disguised the amount and nature of the contracts. The defendants ultimately convinced over twenty-one schools in the Milwaukee and Chicago areas to select their company for services. In total, they requested over $16,000,000 from the E-Rate Program, and, although they never performed any services for these monies, over the course of their scheme, they actually received $1,200,000. The bulk of these funds were laundered through a series of bank accounts in Virginia and a significant amount of the money eventually landed in Pakistan.

---

[1] The parties do not contend that the schools knowingly participated in the defendants' fraudulent scheme.

In October 2004, the defendants pled guilty to various charges, including counts of mail fraud, money laundering, and conspiracy. On January 28, 2005, shortly after the Supreme Court's decision in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005), the defendants were sentenced in separate proceedings to concurrent sentences of seventy-two months' imprisonment for money laundering and sixty months for mail fraud,[2] and three years supervised release. They were also ordered to pay over $1,200,000 in restitution.

The defendants now appeal their sentences.

## II.  ANALYSIS

This court reviews post-*Booker* criminal sentences for unreasonableness. *Booker*, 125 S. Ct. 738. If the sentence imposed falls within the properly calculated range prescribed by the Guidelines, a rebuttable presumption of reasonableness applies to that sentence. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). If the sentence imposed falls outside of the applicable range, the district court should explain the reasons for its departure from the Guidelines' now-advisory range. *United States v. Dean*, 414 F.3d 725, 727-28 (7th Cir. 2005). Thus, a crucial predicate to our review for reasonableness is the district court's proper—and explicit—determination of the total offense level and corresponding sentencing range under the Guidelines. *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005).

---

[2] The district court properly treated the Guidelines as advisory post-*Booker*, but, as discussed *infra*, failed to appreciate the full implications of *Booker* on the continuing requirements to calculate properly the sentencing range under the Guidelines.

Here, the district court did not calculate the total offense level for either defendant with sufficient precision for this court to conduct a proper review for reasonableness. Specifically, both the pre-sentencing report ("PSR") and the government recommended a total offense level of 29 under the Guidelines for each of the defendants. Based on the defendants' criminal history level of I, the sentencing guideline range for this offense level was 87 to 108 months. The defendants filed numerous objections to the PSR, arguing, among other things, that the intended loss was $1.2 million, rather than the $16 million-plus amount recommended in the PSR. The defendants also objected to the PSR's recommendation for upward adjustments due to "sophisticated means" and "role in offense" factors. U.S.S.G. §§ 2S1.1(b)(3), 3B1.1 (2004). Therefore, at the sentencing hearing, the defendants argued that the proper total offense level was 19, or perhaps 21, rather than 29.[3] According to their calculations, the recommended sentencing guideline range was as low as 30 to 37 months.

The sentencing transcript reveals that the district court did not definitely resolve the defendants' objections to the PSR, and therefore did not—and could not—calculate the total offense level and corresponding sentencing range with requisite specificity. Specifically, it is unclear whether the district court granted or denied defendants' objections to the two-level enhancements for "sophisticated means" and "role in offense." In addition, although it appears that the district court determined that the intended loss amount

---

[3] The sentencing ranges for offense levels 19 through 29 (under defendants' Criminal History Category I) are as follows: level 19: 30-37 months; level 20: 33-41 months; level 21: 37-46 months; level 22: 41-51 months; level 23: 46-57 months; level 24: 51-63 months; level 25: 57-71 months; level 26: 63-78 months; level 27: 70-87 months; level 28: 78-97 months; and level 29: 87-108 months.

was $16 million, rather than $1.2 million, this factual finding is also less than clear.

Instead, it appears that the district court judge arrived at only an estimate of the total offense level, which he considered to be "around" level 26 or 27 for each of the defendants. For instance, the district court judge stated the following when sentencing Qasim Bokhari:

> If one were to look at the Guidelines one would say, well, there is a 29 range at this juncture. And if it took into account considerations of ruling on the objections, and giving you credit for the—for the lack of a sophisticated laundering effort, the lack of role in offense, the Court would still have you *somewhere in the 26 range* in that type of analysis. (R.118: 35:9-15) (emphasis added).

Simply put, the sentencing record here lacks sufficient clarity for this court to determine how—or if—the district court made final rulings on the defendants' objections to the PSR, much less the district court's methodology and final determinations pertaining to total offense level under the Guidelines. This is not a mere academic exercise. Without specific information pertaining to the district court's calculation of the total offense level, we cannot determine whether the sentence falls within the Guidelines range (and therefore is entitled to a presumption of reasonableness) or whether it falls outside of the recommended range (and therefore requires sufficient additional reasoning from the district court).[4] *See Dean*, 414 F.3d at 727-28. Nor can we

---

[4] For instance, the interpretation of the district court's statement that the defendants' total offense level was "somewhere in the 26 range" can affect our review. If the district court's statement reflects a finding that the total offense level was 26, then the seventy-two months' sentence imposed falls within the Guidelines range, and is entitled to a presumption of reasonableness. If,

(continued...)

determine where the sentence falls in relation to the upper and lower bands within a particular recommended sentencing range. We need this information to review the sentences for reasonableness and to consider whether any errors by the district court were merely harmless error. *See LaShay*, 417 F.3d at 719.

The government argues that there is sufficient information in the record for this court to calculate the appropriate advisory sentencing range under the Guidelines. But this argument misses the mark. We have repeatedly held that it is the role of the district court—not this court—to make the initial factual findings necessary to support a sentencing calculation. *United States v. Patel*, 131 F.3d 1195, 1202 (7th Cir. 1997); *United States v. Tai*, 41 F.3d 1170, 1175 (7th Cir. 1994). We reiterate that basic proposition.

Thus, the proper course here is to allow the district court to make explicit and clear factual findings and determinations pertaining to the intended loss amount, as well as defendants' other objections to the PSR. This will allow a proper calculation of each defendant's total offense level and sentencing range under the Guidelines. The district court may then resentence, providing, if necessary, sufficient rationale for any deviation from the recommended sentencing range under the Guidelines.

The remand ordered here moots the defendants' claims that the application of *Booker* violates the Due Process clause and *ex post facto* principles. Although we need not reach the merits of these claims, we note this court has recently rejected them. *See United States v. Jamison*, 416

---

[4] (...continued)
however, the statement reflects a finding that the total offense level was 25, then the imposed sentence falls outside of prescribed range, and is not entitled to presumptive reasonableness.

F.3d 538, 539 (7th Cir. 2005); *United States v. Paulus*, 419 F.3d 693, 698 (7th Cir. 2005).

Finally, as we noted during oral argument, by asking that we vacate their sentences under these circumstances, on remand defendants here run the risk of exposing themselves to potentially higher sentences. *See United States v. Goldberg*, 406 F.3d 891, 894-95 (7th Cir. 2005). But the defendants' counsel assured us during oral argument that this is a risk that the defendants are willing to take, so the defendants knowingly embark on this course.

### III.  CONCLUSION

For the foregoing reasons, we VACATE the defendants' sentences and REMAND for resentencing in accordance with this opinion.

A true Copy:

    Teste:


                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*

USCA-02-C-0072—12-6-05