In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2081

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD BOATMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 367 — **James B. Zagel**, *Judge.*

ARGUED NOVEMBER 10, 2014 — DECIDED MAY 15, 2015

Before WOOD, *Chief Judge*, and ROVNER and HAMILTON,
*Circuit Judges*.

WOOD, *Chief Judge*. This appeal concerns the sentence that
Edward Boatman received after he pleaded guilty to one
count of bank robbery, in violation of 18 U.S.C. § 2113(a). Af-
ter two hearings, the district court gave him a below-
Guidelines term of 76 months' imprisonment and three
years' supervised release. In so doing, it rejected his request
for a sentence of time served with community-based drug

treatment. Boatman argues that this sentence was procedurally flawed, because the district court failed to give meaningful consideration to his requested disposition. Boatman's theory demands more of the district court than the law requires, however, and so we affirm its sentence.

**I**

On January 15, 2012, Boatman walked into a TCF Bank branch in Stickney, Illinois, and gave the teller the following note: "Fill The Bag With Stacks of 50's and 20's. I have a gun and will use it. If u decide to Put a ink bomb in the bag, Either I'll be back for you or my partner. Chose your moves carefully [*sic*]." The teller complied by putting some money in a brown bag and giving it to Boatman. Boatman peered in the bag and told the teller that he wanted coins. The teller obliged him, and Boatman walked out. An audit of the teller's drawer revealed that Boatman had robbed the bank of approximately $334.50.

It was not long before a federal grand jury indicted Boatman for his crime, and on August 30, 2013, he entered a guilty plea. In its pre-sentence report, the Probation Office concluded that Boatman was a career offender. Following U.S. Sentencing Guideline § 4B1.1(b)(3), it calculated an offense level of 29 (using a base of 32 and subtracting three levels for acceptance of responsibility) and a criminal history of VI. Had Boatman not been a career offender, his base offense level would have been 20 under § 2B3.1(a); with two levels added for taking property of a financial institution, two added for a threat of death, and three subtracted for acceptance, his final offense level would have been 21. That level, along with criminal history category III (calculated on the basis of his four criminal history points), would have re-

sulted in an advisory range of 46–57 months. In its sentencing memorandum, the government argued that Boatman's two qualifying predicate convictions for career offender status, which together involved 0.8 grams of heroin that he sold for $40, were insignificant and accordingly warranted a downward departure from the Guidelines range. The prosecutor recommended a sentence of 120 months.

Boatman also filed a sentencing memorandum, but he urged the court to impose a much lighter sentence. He stressed that without the career-offender enhancement, the low end of his Guidelines range would have been 46 months. He requested a sentence of time served (approximately 24 months) and drug treatment based on his long history of substance abuse problems involving cocaine and heroin. In support of this request, Boatman submitted a detailed report by a mitigation specialist who was also a certified addiction counselor. He also proffered empirical studies indicating that community-based treatment more effectively prevents recidivism.

The court held what turned out to be the first day of its sentencing hearing on April 14, 2014. Boatman's counsel discussed at some length the reasons for such a substantial deviation from the career-offender range; the government countered with information about the seriousness of Boatman's offense, emphasizing Boatman's express threat to the teller. Ultimately the court decided to continue the hearing until April 22 so that it could consider "how long [the court must] put him in or continue his incarceration to maximize his chance of getting into [the Residential Drug Abuse Program]" (the Program) run by the Bureau of Prisons (the Bureau). Before the hearing resumed, the government submit-

ted a supplemental sentencing memorandum directing the
court's attention to *Tapia v. United States*, 131 S. Ct. 2382, 2393
(2011), which held that a district court "may not impose or
lengthen a prison sentence to enable an offender to complete
a treatment program or otherwise to promote rehabilita-
tion."

On April 22, 2014, the court acknowledged *Tapia* and de-
clared that it would no longer consider the Program in de-
termining the length of Boatman's sentence. Instead, it em-
phasized the need to incapacitate Boatman given the seri-
ousness of his offense, and it announced the sentence of 76
months. Boatman's attorney then asked whether the court
had considered Boatman's history of drug addiction and the
empirical evidence he submitted regarding drug treatment
and recidivism. The judge responded that he had considered
the materials, but that he had concluded that a term more
substantial than Boatman's suggested sentence was neces-
sary for both adequate punishment and incapacitation.
Boatman filed a timely notice of appeal from that judgment.

## II

When we review a sentence imposed by a district court,
we look first for procedural error; if none is present, we turn
to the substantive reasonableness of the sentence. We review
procedural sentencing errors *de novo* and substantive rea-
sonableness only for abuse of discretion. *United States v.
Scott*, 555 F.3d 605, 608 (7th Cir. 2009). Common procedural
errors include "failing to calculate (or improperly calculat-
ing) the Guidelines range, treating the Guidelines as manda-
tory, failing to consider the § 3553(a) factors, selecting a sen-
tence based on clearly erroneous facts, or failing to adequate-
ly explain the chosen sentence—including an explanation for

any deviation from the Guidelines range." *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Boatman contends that the district court erred by failing to give meaningful consideration to his arguments on the § 3553(a) factors. We grant that his arguments went far beyond those we have sometimes described as "stock": they were significant and well supported. The question is therefore whether the court adequately considered them and gave a sufficient explanation for the weight it gave them. Before we turn to that question, however, we must address a wrinkle in the sentencing proceedings: the fact that they were spread over two days and interrupted by supplemental memoranda from the parties.

A

At the end of the hearing on April 14, the court appeared to be ready to recommend a relatively short sentence that would include a placement in the Program. It announced, however, that it was going to postpone its decision so that the parties could answer "a single question of how long [it would] have to put him in or continue his incarceration to maximize his chance of getting into [the Program]." The government filed a supplemental memorandum answering that direct question (approximately 24 months), but also properly alerting the court to the holding of *Tapia*. 131 S. Ct. at 2393. The government recommended the Program for Boatman, but it cautioned the court not to link the term of imprisonment to the treatment program.

Boatman's supplemental memorandum disputed the amount of time it takes a prisoner to complete the Program

and added two additional mitigation arguments. The first concerned Boatman's detention in the Kankakee County jail from July 16, 2012, to August 13, 2013. His attorney argued that this detention was "substandard for federal detention" and had "an increased deterrent effect" (and thus presumably should count for more). Counsel's second point was a request that the district court consider Boatman's union membership as something that increased his chance of stable employment and made him a more promising candidate for rehabilitation.

Boatman's attorney mentioned the supplemental memos at the start of the April 22 proceedings. The district judge responded that he "was out of town yesterday," perhaps to suggest that he had not had a chance to look at them. In any event, the second day of hearings reflected a different tone from the one that prevailed at the end of the first. Toward the end of the April 14 hearing, the court indicated that the career-offender enhancement was inappropriate for Boatman and that it was prepared to base the sentence on a 46- to 57-month Guideline range. It seemed receptive to Boatman's arguments about his drug addiction. But by the start of the second hearing, the court was less sympathetic. It realized that *Tapia* prevented it from imposing a sentence long enough to permit completion of the drug treatment program. And in the end, the court chose a sentence between the lower range it had mentioned at the first hearing and the higher range recommended by Boatman's (correctly calculated) career-offender status.

Boatman does not explicitly challenge his sentence on the basis of the interruption in the sentencing proceeding, nor could he—there is no reason why a judge cannot continue a

sentencing hearing if that seems desirable. The real problem seems to lie in the mixed signals from the two different days, and the difficulty that creates in ascertaining exactly what the court's basis for the sentence was. It is unclear how the court meant to integrate its comments at the two hearings. The most natural understanding of what went on, however, is to treat the April 14 comments as tentative and to rest our analysis on the court's statements at the April 22 hearing.

B

At sentencing, the judge must adequately "explain why the sentence imposed is appropriate in light of the statutory factors specified in § 3553(a)." *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). This explanation must go beyond mere lip service; it should "entail some discussion of any significant argument the defendant has made with respect to his characteristics that might bear on the length of the sentence." *United States v. Schmitz*, 717 F.3d 536, 541 (7th Cir. 2013) (citation omitted). Although there is no rule requiring the district court to review every factor in every case, it touched on almost all of them here.

*§ 3553(a)(1)*—At the April 22 hearing, the court addressed "the nature and circumstances of the offense and the history and characteristics of the defendant" when it reviewed Boatman's criminal history, his age, and the details of the crime. 18 U.S.C. § 3553(a)(1). It began by pointing out that Boatman "would've been much luckier" if he had received a longer sentence for one of his earlier offenses, presumably because he would have been deterred from further crime or he would have received help for his addictions. The court then said it would "discount" some of Boatman's earlier criminal conduct because it was far in the past and not par-

ticularly egregious. It speculated that Boatman may be less likely to return to crime because he is now middle-aged. The court also discussed the circumstances of the offense. Referring to Boatman's request for coins, it commented that "there was a certain level of desperation in this based on [Boatman's] need for drugs."

*§ 3553(a)(2)*—This factor covers the "need for the sentence imposed"; the court addressed it in the course of discussing the seriousness of the offense. "The basic problem with [Boatman's] case," the court reasoned, was that bank robbery is a grave and violent offense. It regarded Boatman's threat of violence—"somebody confronting a teller and implicitly or explicitly threatening deadly harm"—as something that weighed against the mitigating factors of his relatively minor criminal history and his age. See, *e.g., United States v. Castaldi*, 743 F.3d 589, 591 (7th Cir. 2014) (affirming sentence where the "transcript makes clear that the judge found that the devastating financial harm [the defendant] inflicted … simply overwhelmed all of his arguments in mitigation").

*§ 3553(a)(3) & (4)*—The court also discussed "the kinds of sentences available" and "the kinds of sentence and the sentencing range established for the applicable category of offense." It found the guidelines sentence to be "very high" and observed that no one—not the government, not Boatman, not the Probation Office—believed that an in-range sentence was appropriate. In fact, the court noted, the government's recommendation was "significantly lower than the bottom" of the range.

In light of this explicit treatment of the points Boatman had raised, there is no basis for finding that the district court

committed procedural error. See *United States v. Grigsby*, 692 F.3d 778, 791 (7th Cir. 2012). His case looks nothing like those in which we have vacated sentences for insufficient explanations. Boatman directs our attention to *United States v. Vidal*, 705 F.3d 742 (7th Cir. 2013) and *United States v. Miranda*, 505 F.3d 785 (7th Cir. 2007), but neither case helps him. In *Vidal*, we concluded that remand for resentencing was required for the district court to take a closer look at defendant's psychiatric issues, because the court's statement gave us no insight into the judge's evaluation of that condition. Similarly, in *Miranda* the court's brief mention of the defendant's mental illness was not enough to explain what weight, if any, it gave to his schizoaffective disorder.

It is true that the court in Boatman's case could have said more. It did not offer a personalized evaluation of Boatman's addiction, nor did it review on the record any of the evidence Boatman submitted in his sentencing memorandum. And that evidence was extensive. It included an individualized report by a certified addiction counselor, James Tibensky, about Boatman's condition; a publication by the National Institute of Drug Abuse and a publication by the American Medical Association, both citing long-term studies that establish the effectiveness of drug-treatment programs for incapacitation; and a speech by then-Attorney General Holder suggesting the same. Taken together, these materials provide strong support for the position that the national strategy of incarcerating drug addicts has been ineffective. Drug treatment programs, they contend, would do more to reduce recidivism, and Boatman is one of many prisoners who would benefit from such a shift. The court's failure to address this well-supported argument is troubling. When a defendant submits individualized reports and scientific

studies in support of his sentencing memorandum, the bet-
ter practice is for the court to address these materials specifi-
cally.

Nonetheless, unlike the judge in *Vidal* who mechanically
adopted the probation officer's report, 705 F.3d at 743, the
judge here told Boatman that the court had considered the
"significant focus" of the April 14 hearing on Boatman's
drug use as well as the supplemental briefing on the Pro-
gram and that this information had affected the final sen-
tence. In the judge's words, if he had "not viewed much of it
as a mitigation in his case, the sentence would've been 120
months not 76 months." While more would have been help-
ful, the court said enough on the record to assure us that it
had considered Boatman's argument and, more, that Boat-
man's submission had contributed to the below-guidelines
sentence.

The court acknowledged that Boatman had submitted,
"interwoven with the history and analysis of his drug prob-
lems," evidence "that therapeutic interventions … for which
he has volunteered would lessen his danger to the communi-
ty." As it was entitled to do, it decided how much weight to
give to that evidence. Right after the earlier comment, it said
that "[t]he thing that got me to the sentence here that I im-
posed had more to do with retributive aspect of the law and
the incapacitation aspect which are two of the four purposes
which underlie all sentencing." In short, the court concluded
that Boatman's drug use and the promising empirical evi-
dence about drug treatment did not outweigh the need for
retribution and incapacitation. See, *e.g.*, *United States v.
Dachman*, 743 F.3d 254, 262 (7th Cir. 2014); *United States v.
Haskins*, 511 F.3d 688, 696 (7th Cir. 2007).

If the court had not given a reason for rejecting the re-quest for time served and had not recommended that the Bureau of Prisons consider therapeutic alternatives, Boat-man's appeal would be more compelling. But it explained its action by reference to the seriousness of the offense, a factor it is required to consider under § 3553(a)(2). See *Schmitz*, 717 F.3d at 541 (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)). Furthermore, when Boatman's lawyer asked the court to recommend the Program, the judge responded, "I will recommend consideration of therapeutic alternatives to drug use." And it kept that promise. The fact that the court asked the Bureau to consider alternative drug treatment while Boatman is in custody reveals that the judge was well aware of Boatman's principal argument, which focused on the benefits of drug rehabilitation. These two comments—rejecting time served because of the gravity of the offense and recommending that the Bureau consider therapeutic al-ternatives—reassure us that the judge meaningfully consid-ered Boatman's principal request.

### III

While the district court did not respond in terms of the empirical evidence or the mitigation expert's report that Boatman submitted, it did meaningfully consider Boatman's request by explaining how that request was outweighed by other § 3553(a) factors. The court considered Boatman's principal argument for drug treatment but was unpersuaded in light of the seriousness of the bank robbery. Its resolution of these matters did not stray beyond the bounds of its dis-cretion, and so its sentence is AFFIRMED.