In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3054

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILSON TITUS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
13-cr-761 — **Charles R. Norgle, Sr.**, *Judge.*

ARGUED APRIL 19, 2016 — DECIDED MAY 12, 2016

Before BAUER, POSNER, and FLAUM, *Circuit Judges.*

FLAUM, *Circuit Judge.* Defendant Wilson Titus pled guilty to bank fraud arising out of an extensive mortgage fraud scheme involving ten defendants and fifty-two residential properties. He was sentenced to thirty-six months in prison. He appeals, claiming that his sentence was procedurally unreasonable because the district court did not support the sentence with sufficient factual findings. We agree with Titus,

and accordingly, we vacate his sentence and remand for re-sentencing.

## I. Background

In September 2013, ten defendants, including Titus, were indicted in connection with a mortgage fraud scheme involving multiple residential properties in the Chicago area. The indictment alleged that defendants obtained mortgages to finance the purchase of the properties using straw buyers who were dishonest on their mortgage loan applications. Defendants allegedly recruited the straw buyers, helped them fill out fraudulent mortgage applications, and then took kickbacks from the loans. The indictment alleged that the mortgage lenders incurred losses of over eight million dollars when the mortgages were not fully recovered upon the sale or foreclosure of the properties. The scheme operated from August 2004 through October 2012 and involved approximately fifty-two fraudulent mortgage loans.

Titus was charged in six counts of the indictment and pled guilty to Count 3—bank fraud in violation of 18 U.S.C. § 1344—on April 2, 2015. Titus submitted a plea declaration in which he admitted to participating in a scheme to obtain money from financial institutions by using false representations. He claimed that his fraud was limited to two fraudulent mortgage applications. For the first, involving a property located on South Richmond Street, he explained that he introduced the straw buyer to the scheme's ringleader, co-defendant Keith Austin. Titus then accompanied the buyer to the mortgage closing. He admitted that as he helped the buyer sign the mortgage application, he noticed that she had misrepresented her employment. After closing, Titus accepted $5,000 from the proceeds of the mortgage loan for repair work

that he never performed. Titus also admitted to accompanying the same straw buyer to a mortgage closing for a different property located on West End Avenue. Again, Titus encouraged the buyer to sign the loan application even though it did not accurately state her employment.

After Titus's guilty plea, the government provided an explication of the offense asserting that Titus was involved in eighteen out of the fifty-two fraudulent mortgage loans obtained in the scheme. The case agent from the Department of Housing and Urban Development provided the probation office with a spreadsheet detailing the eighteen fraudulent loans in which Titus allegedly took part.[1] The presentence investigation report ("PSR") adopted the government's assertion that Titus was involved in eighteen fraudulent loans and estimated that the total loss attributable to Titus was at least $3,334,627. The PSR explained that this loss amount would increase once the remaining fraudulently-purchased properties were sold.[2]

In calculating the sentence range, the PSR began with a base offense level of 7 and added 18 levels because the loss amount was between $2.5 million and $7 million. *See* U.S.S.G. § 2B1.1.[3] The PSR added another 2 levels because the offense involved ten or more victims. *See* § 2B1.1(b)(2)(A)(i). Because Titus accepted responsibility, the PSR subtracted 3 levels. *See*

---

[1] This spreadsheet is not in the record before this Court.

[2] At the time the PSR was prepared, six of the eighteen fraudulently-purchased properties had not yet been sold.

[3] The probation office applied the 2014 Sentencing Guidelines Manual.

§ 3E1.1. As a result, the total offense level was 24, resulting in a sentencing range of 51 to 63 months in prison.

The government filed a sentencing memorandum agreeing with the guidelines calculation contained in the PSR, except that the government also recommended a 2-level increase for the use of sophisticated means under § 2B1.1(b)(10)(C). In light of that 2-level increase, the total recommended offense level was 26, with a corresponding sentencing range of 63 to 78 months in prison.

The government's sentencing memorandum also asked for restitution in the amount of $3,760,859. The government did not explain how it arrived at this figure but contends on appeal that it more accurately reflects the actual losses attributable to Titus's conduct than the PSR loss amount, which only accounted for twelve fraudulent mortgage loans.

Titus raised several objections to the PSR. He argued that he should only be held responsible for fraud associated with three properties—the South Richmond and West End properties referred to in his plea declaration, and a third property located in Eggleston—because he was unaware that the work he performed for the other properties was in furtherance of the fraudulent scheme.[4] Because the government's chart showed that the loss amount for those three properties was only $987,750, Titus argued that he was entitled to a lower offense level adjustment. *See* § 2B1.1(b)(1). He also contended

---

[4] For the twelve contested properties, there is evidence that Titus acted as an attorney at one of the closings, sought and obtained "water certifications" for certain properties, and sometimes received payment for "rehab work" that was never performed.

that the government had not shown that the sophisticated means enhancement was warranted.

At Titus's sentencing hearing, the district court cited the relevant conduct guideline, § 1B1.3, which provides that in a case involving jointly undertaken criminal activity, a defendant is responsible for actions of others that are reasonably foreseeable in connection with that criminal activity. Relying on that guideline, the court rejected Titus's argument that he should only be held responsible for three fraudulent transactions, explaining that the "most conservative view of this matter would be that he is responsible for at least another five." Later, the district court determined that Titus was responsible for "no less than eight" of the fraudulent transactions. The court rejected Titus's challenge to the sophisticated means enhancement and adopted the offense level, guideline range, and restitution amount (to be paid jointly and severally with the other co-defendants)[5] proposed by the government. Although the guidelines provided for at least 63 months in prison, the district court imposed a 36-month sentence in light of Titus's age of 66 at the time of sentencing and his likelihood of recidivism. This appeal followed.

## II. Discussion

Titus argues that the district court committed procedural error at sentencing because it did not make sufficient clear and explicit factual findings supporting the sentence. In particular, Titus advances that the district court did not articulate the number of fraudulent transactions that it was holding him

---

[5] The district court imposed a restitution amount of $3,760,859, the number proposed by the government, but erroneously attributed it to the PSR.

responsible for, nor did it make factual findings supporting the amount of restitution, the imposition of certain sentence enhancements, and the total offense level. We review claims of procedural sentencing error de novo. *United States v. Boatman*, 786 F.3d 590, 593 (7th Cir. 2015).

In arguing that he is entitled to a resentencing, Titus points to *United States v. Bokhari*, 430 F.3d 861 (7th Cir. 2005), in which we vacated two defendants' sentences for mail fraud because of procedural error. The *Bokhari* defendants had objected to the sentence enhancements and loss amount recommended by the PSR, but the district court did not address those objections when sentencing them. *Id.* at 863–64. We explained that because of that error, the district court "did not—and could not—calculate the total offense level and corresponding sentencing range with requisite specificity." *Id.* In addition, we deemed the district court's statement that the total offense level was "somewhere in the 26 range" insufficiently specific. *Id.* at 864. We concluded: "[T]he sentencing record here lacks sufficient clarity for this court to determine how—or if—the district court made final rulings on the defendants' objections to the PSR, much less the district court's methodology and final determinations pertaining to total offense level under the Guidelines." *Id.*

As in *Bokhari*, the sentencing record in this case lacks sufficient "explicit and clear factual findings and determinations." *Id.* Although the district court likely had a reasoned basis for holding Titus responsible for all eighteen charged

transactions,[6] the court did not make that finding explicit. Instead, the court stated twice that it was holding Titus responsible for at least eight transactions. Without more, we have no way of knowing whether the court held Titus responsible for as few as eight, or as many as eighteen, fraudulent transactions.

Articulating the precise number of fraudulent transactions was particularly important because the district court presumably applied a sentence enhancement for crimes involving ten or more victims.[7] The PSR explained that the adjustment was

---

[6] When criminal conduct is jointly undertaken, as it was here, relevant conduct includes "*all reasonably foreseeable acts and omissions of others* in furtherance of the jointly undertaken criminal activity." *United States v. Austin*, 806 F.3d 425, 430 (7th Cir. 2015) (emphasis added); *see also* U.S.S.G. § 1B1.3(a)(1)(B). Titus does not dispute that all of the eighteen charged transactions were part of the scheme spearheaded by Austin. Titus admitted to recruiting buyers and helping them fill out fraudulent paperwork in connection with three of those fraudulent transactions. As for the others, Titus admitted to performing work on the underlying properties and receiving payments from Austin at the closings. Even assuming that Titus did not know that he was engaged in fraud when he was working on the other properties, it would not have been error for the district court to find that the fraud was reasonably foreseeable.

[7] The district court articulated the offense level and the sentencing guidelines range but did not address any of the sentence enhancements recommended by the PSR. Nonetheless, we assume that the district court applied these enhancements because the offense level of 26 would not make sense otherwise.

The district court did address the sophisticated means enhancement proposed by the government and properly resolved Titus's objection to it by explaining:

appropriate because the offense "resulted in actual losses to 11 different lenders *in connection with 18 fraudulently obtained mortgage loans*" (emphasis added). Although Titus did not object to this sentence enhancement before or during his sentencing hearing, the district court was required to make factual findings supporting it. *United States v. Galbraith*, 200 F.3d 1006, 1013–14 (7th Cir. 2000). Because the enhancement was not contested, the court could have adopted the PSR's findings without making independent findings on the record. *See id*. But the district court did not state that it accepted the PSR's account of the facts, nor did it make factual findings of its own to support the imposition of the sentence enhancement. And without knowing the extent of Titus's participation in the scheme and the number of victims affected by it, we have no way of evaluating the propriety of this enhancement.

Likewise, without knowing how many fraudulent transactions the court attributed to Titus, we cannot evaluate the reasonableness of imposing an 18-level enhancement based on a loss amount of $2.5 million to $7 million. Titus contended that the loss amount was much lower, closer to $1 million. Although we know that the district court disagreed with this low figure, we cannot be certain that the loss amount ex-

---

[Titus] knew that his offense conduct and relevant conduct involved the use of false documents, false verifications of rent and employment, the use of aliases, corruption and participation of loan officers, and the defendant misrepresented himself along the way. There is enough to support an increase of two levels based upon sophisticated means….

ceeded $2.5 million without specific factual findings, including the number of fraudulent transactions for which Titus was held responsible.

The fact that the district court awarded $3,760,859 in restitution is insufficient to justify the loss amount enhancement because the restitution award also lacked factual support. The district court merely adopted the figure contained in the government's sentencing memorandum and erroneously attributed it to the PSR. Without any factual support for the figure, we cannot evaluate whether $3,760,859 is a reasonable restitution amount. *See United States v. Hosking*, 567 F.3d 329, 333–34 (7th Cir. 2009) (remanding a restitution award "based on inadequate explanation and insufficient reasoning" (citation and internal quotation marks omitted)).

The government asks us to assume that the district court found that Titus's participation extended to all eighteen properties because this is the only way to arrive at a total offense level of 26 and a restitution amount above $3.7 million. But it is not our role to justify a sentence that lacks a sufficient explanation with our best guess for why the court imposed the sentence that it did. "We have repeatedly held that it is the role of the district court—not this Court—to make the initial factual findings necessary to support a sentencing calculation." *Bokhari*, 430 F.3d at 864.

### III. Conclusion

For the foregoing reasons, we VACATE Titus's sentence and REMAND for resentencing in accordance with this opinion. In reaching this decision, we make no comment on the substantive reasonableness of the sentence imposed, which is a matter that we leave open for the district court on remand.