In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3067

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN SYMS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cr-30125-DRH-5 — **David R. Herndon**, *Judge.*

ARGUED SEPTEMBER 27, 2016 — DECIDED JANUARY 17, 2017

Before BAUER, ROVNER, and HAMILTON, Circuit Judges.

BAUER, *Circuit Judge.* This case involves a conspiracy to distribute cocaine in St. Louis, Missouri, and the surrounding area. One of the conspirators, Steven Syms, pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846. The district court sentenced Syms to 151 months' im-

prisonment. On appeal, Syms argues that the mandatory minimum sentence contained in 21 U.S.C. § 841(b)(1)(A)(ii) violates the separation-of-powers doctrine. He also argues that the district court improperly based its drug-quantity calculation and sentencing enhancement on speculative and unreliable evidence, and further contends that he qualified for a safety valve reduction in his sentencing, and that his sentence violates the Eighth Amendment. For the reasons that follow, we affirm Syms' sentence.

## I. BACKGROUND

Beginning in April 2011, multiple law enforcement agencies, including the Drug Enforcement Administration, Internal Revenue Service, and United States Marshals Service, began investigating a drug-trafficking operation based on information that Tyrone Carraway of St. Louis, Missouri, was supplying cocaine to brothers Cortez and Richard Yarbough of East St. Louis, Illinois. During the course of the investigation, agents gathered information and collected evidence through confidential informants, controlled buys of cocaine, witness interviews, surveillance, and searches. The investigation revealed that Carraway and coconspirator Richard Graham distributed cocaine to the Yarbough brothers, and other defendants and unidentified individuals.

The ultimate source of Carraway and Graham's supply was Huey Jones of Houston, Texas. The intermediaries between Jones, Carraway, and Graham were Syms and coconspirator Antoine Meeks. Syms, Meeks, and an unindicted co-conspirator, traveled to Houston to obtain cocaine from Jones. Syms also recruited Keith Harris to transport drugs and money

between Houston and St. Louis; Harris transported the cocaine and money in the gas tank of the vehicles he drove to retrieve the drugs.

On April 27, 2012, Harris' vehicle was searched during a traffic stop. The search revealed 40 packages that each contained around .5 kilograms of cocaine, for a total of 19.91 kilograms. A fingerprint analysis of the packages showed latent prints belonging to Syms, Meeks, Jones, and others.

On October 14, 2012, agents conducted surveillance on Syms, Meeks, and another individual. Syms drove to a residence in St. Louis, at which time agents searched the vehicle, residence, and garage and recovered two packages that contained 982 grams of cocaine. At a post-arrest interview, Meeks revealed that he and Syms had traveled to Houston to obtain the drugs.

On June 18, 2013, a grand jury charged Syms with conspiracy to distribute, and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. On June 27, 2013, Syms was arrested and released on a $10,000 unsecured appearance bond. In a September 6, 2013, interview, Jones implicated Syms in several additional trips to Houston throughout 2011 obtaining a total of 41 kilograms of cocaine. Jones advised that the final shipment of cocaine was 19.91 kilograms that was seized by law enforcement, a shipment that Syms helped to deliver. Jones also stated that Syms sought to increase his role in the conspiracy and the amount of cocaine that was being transported so that he could sell it in St. Louis.

Agents interviewed Harris on September 10, 2013, who described how Syms recruited him to be a courier for the drug-trafficking operation, and of Syms' involvement in the trips to Houston to obtain cocaine.

Syms pleaded guilty to the one-count charge against him on August 28, 2014. The United States Probation Office prepared Syms' Presentence Investigation Report. It detailed the interview notes from Jones and Harris. Syms' PSR determined that he was responsible for conspiring with multiple defendants and others to possess and/or distribute 61.8 kilograms of cocaine. Although the amount contained in the indictment was 5 kilograms or more, the PSR, relying in part on statements from coconspirators, determined that Syms' relevant conduct was 61.8 kilograms of cocaine.

Using the 2013 Guidelines Manual, the PSR recommended a base offense level of 36. The PSR applied a three-level enhancement, pursuant to U.S.S.G. § 3B1.1(b), for being a manager or supervisor of a criminal activity involving five or more participants. Syms was credited for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b). Accordingly, his total offense level was 36.

Syms filed a written objection to the PSR, challenging the inclusion of the uncharged drug amounts and the manager/supervisor enhancement. He complained that the statements taken from coconspirators used to increase the drug amount and apply the manager/supervisor enhancement were self-serving and unreliable. The government filed its response outlining the basis for the information used in the PSR, and Syms withdrew his objections. Syms then filed a sentencing

memorandum which did not raise any of the constitutional claims he raises before us but requested that the district court impose the statutory minimum sentence of ten years.

At sentencing, the district court accepted the PSR. The court calculated Syms' base offense level at 34 using the 2014 Guidelines, which contained a change from the 2013 Guidelines that decreased Syms' base offense level by two. After applying the manager/supervisor enhancement and crediting Syms with acceptance of responsibility, the district court calculated Syms' total offense level to be 34. The court found that the statutory minimum sentence was ten years, and the maximum was a life sentence. The court determined the Sentencing Guidelines range to be from 151 to 188 months. Before sentencing Syms, the court specifically asked Syms' counsel if there were any other arguments made in mitigation that he had not fully addressed, to which counsel replied, "No." The court then ordered Syms to pay a $500 fine and sentenced him to 151 months in prison with five years of supervised release. This appeal followed.

## II. DISCUSSION

Syms first argues that mandatory minimum sentences violate the separation-of-powers doctrine by granting prosecutors sole discretion in deciding whether to pursue charges that carry mandatory minimum sentences and stripping the judicial branch of discretion in sentencing.

We flatly rejected a similar argument in *United States v. Nigg*, 667 F.3d 929, 934 (7th Cir. 2012). We held that mandatory minimum sentences did not violate the separation-of-powers doctrine, recognizing that "determinate sentences were found

in this country's penal codes from its inception[.]" *Id*. (internal alteration omitted) (quoting *Chapman v. United States*, 500 U.S. 453, 467 (1991)); *see also United States v. Brucker*, 646 F.3d 1012, 1019 (7th Cir. 2011) ("We have rejected separation of powers challenges to mandatory minimum sentences, and we see no reason to revisit that holding here."). We decline Syms' invitation to upend well-settled precedent in this case.

We also note that the district court went above the mandatory minimum sentence of ten years, sentencing Syms to twelve years and seven months. The district court determined the Guidelines range and then used the factors set forth in 18 U.S.C. § 3553(a) in fashioning Syms' sentence. Contrary to Syms' contention, the district court did use its discretion in sentencing him. Syms' sentence did not violate the separation-of-powers doctrine.

Next, Syms contends that the district court violated his rights under the Fifth and Sixth Amendments when it sentenced him based upon uncharged conduct contained in the PSR. Specifically, Syms argues that the district court's conclusion that he was involved in distributing 61.8 kilograms of cocaine in the operation was based upon unreliable information provided by his coconspirators. He further argues that the Probation Department's recommendation that Syms receive a leadership role enhancement was similarly based upon unreliable information from coconspirators.

The government counters that Syms waived this argument by withdrawing his objections to the PSR, and we agree. Prior to sentencing, Syms objected to the PSR, challenging the drug quantity calculation and the manager/supervisor enhancement

on the basis that they were based on unreliable coconspirator statements. He later withdrew these objections and did not renew them at sentencing. We have repeatedly found that a withdrawal of an objection generally results in a waiver of that argument on appeal, *see, e.g.*, *United States v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009) (collecting cases), and Syms has not put forth any argument warranting a deviation from that holding.

In addition, the district court judge specifically asked Syms' counsel whether he had considered all arguments in mitigation of the sentence, to which she replied in the affirmative. The judge took this step in order to ensure that any countervailing factors had been appropriately considered, a practice that in our view is to be commended. In *United States v. Garcia-Segura*, we admonished defendants that if defense counsel answered this question in the affirmative during sentencing, subsequent challenges to the defendant's sentence for failure to address a principal mitigation argument would be waived. 717 F.3d 566, 569 (7th Cir. 2013). Accordingly, we find that Syms has waived his challenges to the district court's fact-finding at sentencing.

Syms also argues that the district court erred by not applying the "safety valve" provision in U.S.S.G. § 5C1.2 of the Sentencing Guidelines in order to reduce his sentence. The government argues that Syms failed to qualify for the safety valve according to the plain language of the Guidelines.

The Mandatory Minimum Sentencing Reform Act of 1994 includes a safety valve provision that created more flexibility in sentencing by permitting courts to sentence below the

minimum sentences fixed by statute. *See* 18 U.S.C. § 3553(f). The Sentencing Commission added an analogous provision to the Guidelines. *See* U.S.S.G. § 5C1.2. The safety valve is intended to benefit "first-time, non-violent drug offenders who were not organizers of criminal activity and who have made a good-faith effort to cooperate with the government." *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir. 1996); *see also United States v. Thompson*, 76 F.3d 166, 171 (7th Cir. 1996) (discussing legislative history of the statute and guideline).

In order to apply the safety valve, the court must find that:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the

> defendant has no relevant or useful other infor-
> mation to provide or that the Government is
> already aware of the information shall not
> preclude a determination by the court that the
> defendant has complied with this requirement.

18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2.

The defendant bears the burden of proving by a preponder-
ance of the evidence his eligibility for safety valve relief. *United
States v. Ramirez*, 783 F.3d 687, 692 (7th Cir. 2015). Generally,
we review the district court's factual findings concerning a
defendant's eligibility for the safety valve for clear error. *United
States v. Rebolledo-Delgadillo*, 820 F.3d 870, 879 (7th Cir. 2016).
However, Syms raises this issue for the first time on appeal,
which impacts the standard of review. Consequently, he has
either forfeited or waived the argument. We will generously
assume that Syms' silence on this issue until this point is the
result of a "failure to make a timely assertion of a right" rather
than an "intentional relinquishment[.]" *Ramirez*, 783 F.3d at
693 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).
Accordingly, we assume Syms merely forfeited his safety valve
request, which permits plain error review. *See id*. at 694 n.5
(noting that, in addition to our circuit, other circuits have
applied plain error review where the defendant failed to
request safety valve consideration before the district court).

In any case, it is clear that Syms is not entitled to relief. The
district court determined that Syms was a manager/supervisor
of the operation, which precludes his qualifying for the safety
valve. Indeed, providing Syms with relief under the safety
valve would run counter to the purpose of the statute, which

is to reward those who have cooperated with the government and did not organize the criminal activity. *See Arrington*, 73 F.3d at 147; *see also United States v. Marin*, 144 F.3d 1085, 1095 (7th Cir. 1998). There was no plain error by the district court.

Finally, Syms argues that his 151-month sentence is so grossly disproportionate to his crime that it constitutes cruel and unusual punishment under the Eighth Amendment. The crux of Syms' argument is that his sentence is disproportionate because it is the same as that of coconspirator Meeks, who has a more extensive criminal history than Syms.

The Supreme Court has recognized that "[t]he Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citation and quotation marks omitted). But "narrow" does not equate to strict proportionality. *Id*. at 23. Only extreme sentences that are "grossly disproportionate" to the crime will be deemed cruel and unusual. *Id*. (citation omitted). Additionally, "eighth amendment challenges to sentences that are both prescribed by the guidelines, and within the statutory maximums established by Congress, are looked on with disfavor." *United States v. Saunders*, 973 F.2d 1354, 1365 (7th Cir. 1992) (citation omitted).

In determining whether a sentence is grossly disproportionate, the Supreme Court has outlined a three-factor test, which considers: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*,

463 U.S. 277, 292 (1983). The first factor is a threshold factor; if an inference of gross disproportionality is not established, we need not conduct any comparative analysis within and between jurisdictions. *United States v. Gross*, 437 F.3d 691, 692–93 (7th Cir. 2006).

In examining the first factor, the Supreme Court has found that "[p]ossession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (quoting *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 668 (1989)). The Court further detailed the violence, crime, and social displacement that is attendant to the possession and distribution of drugs in this country. *Id*. at 1002–04. Thus, we recognize the serious nature of the offense that Syms committed.

Regarding the harshness of Syms' sentence, we note that he was sentenced within the statutory range, and at the lowest end of the Guidelines range. "We have not in the past looked very favorably upon Eighth Amendment challenges to sentences that are prescribed under the guidelines and are within the statutory maximums established by Congress." *United States v. Jones*, 950 F.2d 1309, 1317 (7th Cir. 1991).

We have also permitted lengthier sentences for similar crimes. *See Saunders*, 973 F.2d at 1365–66 (defendant's 262-month sentence for conspiring to distribute and intent to distribute 13 ounces of cocaine was not grossly disproportionate); *United States v. Washington*, 109 F.3d 335, 338 (7th Cir. 1997) ("The cruel and unusual punishments clause of the eighth amendment permits life imprisonment for a single drug

crime." (citation omitted)). Therefore, we conclude that Syms'
sentence does not give rise to an inference of gross dispro-
portionality. As a result, we need not conduct any comparative
analysis with Meeks' sentence, or within and between jurisdic-
tions.

## III. CONCLUSION

For the reasons stated above, we AFFIRM Syms' sentence.