NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 2, 2018
Decided October 9, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-3295

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 15-CR-188-1 |
| SEBASTIAN DEPTULA, *Defendant-Appellant*. | Samuel Der-Yeghiayan, *Judge*. |

**O R D E R**

Sebastian Deptula pleaded guilty to one count of wire fraud for his role in orchestrating a wide-reaching scheme that defrauded credit card issuers, lenders, and insurance companies out of more than $3.5 million. When calculating the advisory Guidelines range, the district court increased Deptula's base offense level because the offense involved a misrepresentation during the course of a bankruptcy proceeding and use of "sophisticated means." Deptula now appeals his 156-month prison sentence, arguing that the district court erred by not addressing either enhancement at sentencing and by imposing an unreasonable sentence. Because Deptula waived the first argument and his within-Guidelines sentence is substantively reasonable, we affirm.

**I**

Between 2010 and 2014, Deptula facilitated a multifaceted scheme to fraudulently obtain millions of dollars from credit card issuers, consumer loan providers, and insurance companies. He recruited others to join in the credit card component of the scheme in part by assuring them that they could later discharge accumulated debt by filing a bankruptcy petition. The scheme worked as Deptula planned: sixteen recruits maxed out multiple credit cards each and then declared bankruptcy to avoid responsibility for the debts. Deptula and nineteen others were eventually caught and charged in two separate indictments. Deptula was charged with ten counts of wire fraud, 18 U.S.C. § 1343, and one count of mail fraud, *id.* § 1341. He pleaded guilty to one count of wire fraud.

In the written plea agreement, the parties agreed that the district court should increase Deptula's base offense level of 7 by 2 levels because the offense involved at least ten victims, U.S.S.G. § 2B1.1(b)(2)(A), and by 4 levels for his leadership role, *id.* § 3B1.1(a). But Deptula opposed the government's position that three other adjustments based on specific offense characteristics applied: an 18-level increase because the loss amount exceeded $3,500,000, *id.* § 2B1.1(b)(1)(J); a 2-level increase because the offense involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding, *id.* § 2B1.1(b)(9)(B); and a 2-level increase for the use of sophisticated means, *id.* § 2B1.1(b)(10)(C).

The probation officer who prepared the presentence investigation report included all five offense-level increases in her Guidelines calculations for a total offense level of 32, after accounting for acceptance of responsibility under U.S.S.G. § 3E1.1. In his sentencing memorandum, Deptula objected to his criminal history category of II and to the application of enhancements based on the number of victims and the loss amount. But he did not object to the other two enhancements (for misrepresentation in a bankruptcy proceeding or use of sophisticated means). In fact, Deptula calculated a "Proposed Guidelines Range" that appears to have included these enhancements.

In advance of sentencing, Deptula highlighted that he has only one prior conviction (for mortgage fraud) and has used his time in custody in a productive manner (teaching yoga to other inmates). He also pointed to his strong connections with family and friends in Poland, as evidenced by the many letters of support submitted to the district court. As to the nature and circumstances of the offense, Deptula noted that the fraud scheme involved no violence and harmed only institutional victims. Based on

these facts and his inevitable deportation upon the completion of his sentence, Deptula requested a sentence of 48 months in prison. For its part, the government argued that a sentence at the upper end of the Guidelines range was appropriate based on the length and scope of the scheme and Deptula's "manipulative and self-centered character."

At the sentencing hearing, the district court noted Deptula's written objections to the probation officer's calculations of the loss amount, number of victims, and criminal history category, and then asked Deptula and his counsel if they had "any other objections or comments relating to the PSR." One of Deptula's attorneys said, "No additional," and Deptula too said, "No." After hearing argument on each of the three objections, the court found that the 18-level increase for loss amount was appropriate, that the number of victims exceeded ten, and that a criminal history category of II was proper. The court therefore adopted the probation officer's calculation of an adjusted offense level of 32 and a resulting advisory range of 135 to 168 months' imprisonment.

The parties then presented argument on the 18 U.S.C. § 3553(a) factors, largely reiterating the positions in their sentencing memoranda. In addressing the factors, the district court considered Deptula's modest criminal history, his conduct while in detention, and the many letters of support. As to the serious nature of the offense, the court noted that financial fraud undermines financial institutions, creates customer insecurity, and necessitates the expenditure of significant government resources. The court further acknowledged Deptula's leadership role in the "complex and lengthy scheme," which caused millions of dollars in loss. While crediting Deptula's decision to plead guilty and accept responsibility, the court underscored the seriousness of his offense conduct, noted the prior conviction for mortgage fraud, and agreed with the government that Deptula exhibited a high likelihood of committing future crimes.

Based on these findings, the district court sentenced Deptula to 156 months' imprisonment and ordered full restitution. The court considered the likelihood of deportation in declining to order supervised release to follow the term of imprisonment. After pronouncing the sentence, the judge asked: "Defense, did I cover all of your arguments?" Counsel answered in the affirmative—"I believe so"—and confirmed that there was "nothing further."

## II

Deptula now contends on appeal that the district court erred by not expressly addressing at sentencing the offense-level increases for misrepresentation during a

bankruptcy proceeding or use of sophisticated means. The government responds that Deptula waived this argument and that, in any event, the district court did not plainly err by not expressly discussing the factual basis for these enhancements at sentencing. We agree on both points.

## A

We have repeatedly held that when a defendant elects to pursue certain sentencing arguments while forgoing others, he waives the arguments not presented. See, e.g., *United States v. Barnes*, 883 F.3d 955, 957–58 (7th Cir. 2018); *United States v. Brodie*, 507 F.3d 527, 531–32 (7th Cir. 2007); *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). Of course, this is not an inflexible rule. See *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). But waiver is more readily found in cases where, as here, the defendant had access to the PSR, knew of his right to object to the probation officer's recommendations, and confirmed at sentencing that all of his arguments in mitigation had been addressed. See *Brodie*, 507 F.3d at 531; *United States v. Syms*, 846 F.3d 230, 234 (7th Cir. 2017); *United States v. Garcia-Segura*, 717 F.3d 566, 569 (7th Cir. 2013).

In his sentencing memorandum, Deptula objected to three parts of the probation office's Guidelines calculation in the PSR: the loss amount, the number of victims, and the criminal history category. Then, at the beginning of the sentencing hearing, Deptula and his counsel both expressly confirmed that he was objecting to only these three parts. This deliberate course of action evinces an intentional waiver. See *Brodie*, 507 F.3d at 531 ("[The defendant] objected to certain parts of the PSR and stated on the record that he did not have any further objections when asked by the district court. This seems to us the paragon of intentional relinquishment."). Further, after the district court addressed the defense's three objections and pronounced the sentence, Deptula's counsel confirmed that the court had addressed everything raised by Deptula. Based on the record before us, we conclude that Deptula waived his right to challenge these sentencing enhancements.

Even if we view Deptula's argument as merely forfeited, the district court did not plainly err by not discussing the offense-level increases for misrepresentation in a bankruptcy proceeding and use of sophisticated means. See *United States v. Olano*, 507 U.S. 725, 731–36 (1993) (explaining forfeiture and defining plain-error review). After addressing Deptula's three objections, the court concluded that the PSR reflects the appropriate total offense level and then adopted the probation officer's calculations. The court was not obligated to address parts of the PSR to which neither party had

objected—and to which Deptula affirmed on the record that he did not object. "A party may not by his own actions lull the court into believing that an express finding is unnecessary and then object when it makes no such finding." *United States v. Walton*, 255 F.3d 437, 442 (7th Cir. 2001). That is what Deptula attempts to do here.

In his reply brief, and citing *United States v. Bokhari*, 430 F.3d 861, 863 (7th Cir. 2005), Deptula contends that the district court's obligation to make a "proper—and explicit—determination of the total offense level and corresponding sentencing range" is not subject to waiver or forfeiture. But *Bokhari* is inapplicable. There we vacated the sentences because the district court "arrived at only an estimate of the total offense level," and it was unclear from the sentencing transcript whether the judge had granted or denied the defendants' objections to two sentencing enhancements recommended in the PSR. 430 F.3d at 864. Here, however, the district court resolved each of Deptula's objections to the PSR and then, based on its findings, stated the total offense level, criminal history category, and corresponding advisory sentencing range.

B

Deptula also challenges the substantive reasonableness of his 156-month sentence on two grounds, but neither is sufficient to overcome the presumption of reasonableness afforded a sentence within the advisory range. *United States v. Miller*, 834 F.3d 737, 744 (7th Cir. 2016).

First, Deptula contends that the record does not support the district court's findings about the impact of financial fraud, which the court considered in assessing the seriousness of the offense and the need for the sentence to promote respect for the law. See 18 U.S.C. § 3553(a)(2)(A). We disagree. The record contains ample support for the court's conclusion that financial fraud undermines financial institutions, creates customer insecurity, and requires significant governmental resources to discover and prosecute. In the plea agreement and at the plea hearing, Deptula admitted that the fraud scheme affected multiple financial institutions over a more than four-year period. And although Deptula disputed the probation officer's loss calculation, he nevertheless admitted in his sentencing memorandum that the total loss exceeded $1 million. The sentencing judge was permitted to rely on these undisputed facts to draw common-sense conclusions about the seriousness of the fraud. See *United States v. Freeman*, 843 F.3d 315, 319–21 (7th Cir. 2016). This includes drawing the reasonable inferences that fraud schemes like Deptula's divert government resources and undermine confidence in financial institutions.

Second, Deptula argues that the district court's statement on the likelihood of deportation contradicts its emphasis on deterring criminal conduct and protecting the public from further crimes by Deptula. See 18 U.S.C. § 3553(a)(2)(B), (C). But the fact that Deptula is likely to be deported after serving his prison sentence does not undermine the court's finding that there is a "definite need" to deter him and others from committing fraud. See *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1048 (7th Cir. 2013) (explaining that, despite likelihood of deportation, defendant's within-Guidelines sentence was justified by the seriousness of the offense and the need to promote respect for the law). In assessing the need for deterrence and public protection, the district court weighed the length, scope, and complexity of the scheme; the substantial amount of restitution that would be ordered; and the fact that Deptula's previous conviction for mortgage fraud did not deter him from engaging in additional fraudulent activity.

The district court also adequately considered Deptula's mitigating argument that he would no longer pose a danger in the United States because of the likelihood that he would be deported. Although the court did not state how the potential for deportation influenced the selection of a prison term, the court considered each of the § 3553(a) factors before arriving at a within-Guidelines sentence. See *Ramirez-Fuentes*, 703 F.3d at 1049 ("Although the district judge did not explicitly discuss his consideration of Ramirez–Fuentes's deportation argument, he nevertheless demonstrated that he gave meaningful consideration to the factors in § 3553(a) and to the claims that merited comment."). The district court also declined to impose any term of supervised release precisely because Deptula would be deported following his term of imprisonment. We see no reason to overturn this presumptively reasonable sentence on appeal.

For these reasons, we AFFIRM the judgment of the district court.